CORWITH and others vs. THE STATE BANK OF ILLINOIS.

THE SAME vs. THE SAME.

Under sec. 9, ch. 264, Laws of 1860, the right of a party to appeal from an order of court is not cut off until the expiration of thirty days after the service upon him of a *written notice* of the making of such order, although he may have had actual knowledge of the order independently of such a notice, and may even himself have drawn it up by his attorney.

Where a judgment is reversed for error, a sale under the execution, if made to a stranger, will not be avoided because of such reversal. Otherwise, where the sale is made to the plaintiff in the execution.

Where a *fieri facias* is issued, by mistake, without the seal of the court affixed, and a sale made under it, the court may afterwards cause the writ to be amended by the affixing of the seal; and the sale under the writ will not be held void by reason of such original defect.

It makes no difference, in such a case, whether the sheriff's deed for the property sold under the defective writ, has been executed or not; the sale must in either case be held good.

APPEAL from the Circuit Court for *La Fayette* County.

In August, 1853, an attachment issued at the suit of *Corwith* against the property of the *State Bank of Illinois*, in this state, and the writ was executed upon certain lands of the defendant in La Fayette, Grant and Iowa counties. The plaintiff filed his declaration in April, 1854, and obtained a judgment in his favor in October following for about $16,700 ; and writs of *fi. fa.* were issued to the sheriffs of the several counties above named in May, 1855, under which said lands were sold, a portion of them to the plaintiff, and others to persons who were strangers to the action. Meanwhile, to wit, in June, 1854, a writ of error to review the cause issued from this court, but no attempt was made to stay proceedings under the judgment. In November, 1855 (subsequent to the sales), the judgment of the circuit court was reversed, and a new trial awarded. 6 Wis., 551. Afterwards the bank moved to set aside each of said sales, and the circuit court granted the several motions in May, 1857, on the ground that the seal of the court was not attached to the several writs of *fi. fa.* under which the sales

were made. This order was reversed by the supreme court on appeal, in August, 1858, for the reason that the necessary papers had not been served upon the plaintiff's attorneys along with the motion to vacate said sales. 8 Wis., 376. Meanwhile, on the 21st of April, 1858, the plaintiff was nonsuited on his own motion, and the writ of attachment quashed. On the 22d of the same month, the circuit court granted a motion of the plaintiff, that the writs of *fi. fa.* under which the sales were made be amended by affixing the seal of the court, and the seal was accordingly affixed to each of said writs. At the October term of the court in the same year, the defendant again moved to set aside the sales at which the plaintiff became the purchaser, and this motion was granted. On appeal to this court, the order was at the first hearing reversed (11 Wis., 430), but upon a rehearing it was affirmed, in May, 1862. 15 Wis., 289. At the spring term of the circuit court, in 1863, the defendant moved to set aside the other sales on the ground that the judgment under which they were made had been reversed, and that the seal of the court was not affixed at the time of the sales, to the executions on which they were made, and also upon a variety of other grounds, which do not seem to have been insisted upon in this court, are not noticed in the opinion, and are therefore omitted here. The circuit court made an order granting the motion as to certain specific tracts of land sold at said sales, and for which, at the time notice of the motion was served, deeds had not been executed by the sheriff—but denying the motion as to the lands of which such deeds had been executed before service of such notice. The several persons interested in the sales so vacated appealed from that part of the order vacating them; and the defendant appealed from so much of it as refused to set aside the other sales.

*Emmons & Van Dyke*, for defendant :

1. The absence of a seal from the execution was a fatal irregularity, rendering it, so long as the defect remained, a mere nullity. 2 Dunlap's Prac., 777; *Read v. Markle*, 3 Johns.,

516 ; *Parsons v. Lloyd*, 3 Wils., 345.  2. The order to amend the execution was not obtained until nearly three years after the reversal of the judgment on which it issued, and after the plaintiff had been nonsuited, and the original writ quashed. There was then no suit in court, no writ, process or proceeding to amend, no record of any pending action to amend by.  It was as though no suit had ever been commenced.  We have not found an instance reported of a plaintiff seeking to amend his own proceedings in a cause, after discontinuance.  The order to amend the execution was therefore a mere nullity ; in any collateral action the court might treat the sales as void, and the officer could not justify under the writ.  Yet it was within the discretion of the court to set the sale aside, or leave the party to other remedies.  It has chosen to vacate the sales ; and unless this court can discover a gross abuse of discretion, it will not interfere.

*J. H. Knowlton* and *J. A. Sleeper, contra* :

The circuit courts of this state have jurisdiction to order amendments to be made.  All judicial proceedings are binding until reversed, annulled or vacated, where there is jurisdiction and the proceedings are merely erroneous.  But the lack of a seal to the executions was an amendable defect, and the order of amendment was not erroneous.  1 Burr. Pr., 291 ; 4 Cow., 550 ; *Sawyer v. Baker*, 3 Greenl., 29 ; *Lowe v. Morris*, 13 Geo., 147 ; *Whiting v. Beebe*, 7 Eng. (Ark.), 421 ; *Butterfield ads. Silner*, 2 Carter (Ind.), 24 ; *Clark v. Hellen*, 1 Iredell, 421 ; *Purcell v. McFarland*, id., 34 : 2 Denio, 185 ; 9 Johns., 386 ; 15 Wend., 302 ; 18 id., 667 ; 19 id., 90 ; 5 id., 103 ; 3 Cow., 56 ; 6 id, 51 ; 1 id., 33, 129, 141, 202, 203, 711 ; 4 id., 503 ; 1 Kelly, 341, 436 ; 3 Gilman, 449 ; 1 id., 41 ; 9 Ala., 547 ; 1 Branch, 437.  When the executions were amended they became as good as though the seal had been affixed in the first instance. *Galloway v. McKeithen*, 5 Iredell, 12 ; id., 203 ; 7 id. 14 ; 1 id., 34, 421 ; 13 id., 421.  Executions and other writs are amendable by the *præcipe. Berthon v. Keeley*, 4 Yeates, 205 ;

*Shoemaker v. Knorr*, 1 Dallas, 197 ; 8 S. & R., 157 ; 4 Blackf., 496, 263 ; 5 id., 374, 534. Counsel also cited R. S. 1849, ch. 100, secs. 4, 14, 19.

*By the Court*, COLE, J. Before these causes were reached for argument, a motion was made to dismiss the appeal in the case where the bank is appellant. That motion was taken up and considered with the case upon the merits, and our conclusions upon it will now be stated.

These are cross appeals from different parts of the same order made by the circuit court of La Fayette county, on a motion made by the *State Bank of Illinois* to vacate and set aside certain execution sales. The motion was granted as to some of the sales, and denied as to others; and each party has appealed from so much of the order as affects injuriously his interests. It appears, from the motion papers, that the attorneys for the bank drew up and procured to be entered the entire order; and the motion to dismiss is based upon the fact that no appeal was made or taken by the bank from any part of the order within thirty days from the time it was entered. It is admitted, however, that there has been no written notice given by the adverse party of the entry of this order; but it is contended that this is not necessary where a party appeals from an order or judgment that he himself has drawn up and entered. The question then is, must written notice be given under such circumstances, in order to cut off the right of appeal? We are of the opinion that it must be.

Section 9, chap. 264, Laws of 1860, provides that appeals may be taken to the supreme court from judgments in civil actions within two years from the entry thereof, and from orders made by the circuit court *within thirty days after written notice of the making of the same.* Now we think it very clear from the language here employed, that it was not the intention of the legislature to limit the right of appeal from an order to the period of thirty days from the time the party whose rights

are adversely affected by it has notice or knowledge of the entry of the order. For if this were the real object and intent of the statute, then it might with propriety be held that verbal notice, or the fact that the party was in court when the order was announced, would be sufficient. But the statute requires that in order to limit the time for appealing, *written notice* must be given of the entry of the order. This is a limitation upon the right of appeal, and the prevailing party can set the statute running against his adversary by giving the written notice prescribed therein. He has the whole matter under his control, and can set the statute running when he pleases. The corresponding provision of the New York statute is substantially the same as section 9. In *Rankin v. Pine*, 4 Abbott's Prac. R., 309, this precise question was presented to the supreme court of the second district at general term. It was there held that the service of written notice of a judgment or order, in order to limit the right of appeal by the expiration of thirty days (as contemplated by section 332 of the code of that state), is necessary even when the appeal is taken from a judgment or order entered by the appellant himself. And when we consider the whole statute, and have regard to the principle that the right of appeal is favored by the courts, we are satisfied that this construction is the one to be adopted. The cases of *Fry v. Bennett*, 7 Abbott's Pr. R., 352 ; *Leavy v. Roberts*, 8 id., 310 *; Staring v. Jones et al.*, 13 How Pr. R., 423, and *Sherman v. Wells*, 14 id., 522, will be found to have a strong bearing upon the point we have been considering. We have been referred, in support of the motion to dismiss, to the case of *Cameron v. Sullivan*, 15 Wis., 510. It would be unprofitable to dwell upon the question decided there, and we will merely add that we do not think there is anything in the decision of that cause in conflict with the views already expressed. The motion to dismiss the appeal is therefore denied.

And this brings us to a consideration of the appeal upon the merits.

In *Corwith v. The State Bank of Illinois*, 15 Wis., 289, it was stated to be a well settled rule of law, that where a judgment is reversed for error, a sale under the execution will not be avoided because of such reversal. It was held, however, in that case, that the reason and principle of this rule failed where the plaintiff in the execution was a purchaser at the sale. As he had parted with no money upon the strength and credit of the sale, but had taken the property in satisfaction of his judgment, no inconvenience or hardship would result if restitution was ordered on reversal of the judgment. Not so, however, with strangers, who had parted with their money at the sale. Their titles were to be protected, and they could not be affected by any subsequent acts over which they had no control. That this is the well established doctrine of the authorities, there can be no doubt. *Woodcock v. Bennet*, 1 Cowen, 711; *Jesup v. The City Bank of Racine*, 15 Wis., 604. This rule of law, then, disposes of these appeals, unless the position can be maintained, that the sales under the executions were absolutely void because the seal of the court was not attached to them by the clerk when the writs were issued. And we are clearly of the opinion that the sales cannot be avoided for that reason. The neglect of the clerk to affix the seal of the court to the writs did not render them void. It was a defect which could be cured by amendment, as the large number of authorities cited upon that point by the counsel for the purchasers, abundantly established. The record shows that the seals were affixed to the executions by an order of court before this motion was made to set aside the sales. We cannot doubt the power of the court to make this amendment. The power given courts in chap. 100, R. S. 1849, to rectify and amend errors in their proceedings, writs and process, is exceedingly broad and liberal. It was properly exercised in this case to cure the mistake of the clerk in neglecting to affix seals to the executions in the first instance.

The circuit court vacated and set aside the sales in cases

where no deeds had been executed and delivered by the sheriff to the purchasers; but where such deeds had been given, refused to set them aside. We see no reason for setting aside the sales in the one case, which does not apply with equal force to the other. The authorities make no distinction between a case where the sheriff's deed has been given and one where it has not; and we think there is no valid ground for making any such distinction. If the title of the purchaser is to be protected when acquired under an execution merely erroneous (which must be a conceded point, under the authorities), why should it not be so protected as well before as after the giving of the sheriff's deed? We are unable to see any substantial reason for making a distinction in the cases, and do not think any exists in law.

So much of the order as vacated the sales where no deeds had issued, is reversed, and the rest of the order is affirmed.